**Edward H. PHILLIPS, Plaintiff–Appellant,**

v.

**AWH CORPORATION, Hopeman Brothers, Inc., and Lofton Corporation, Defendants–Cross–Appellants.**

Nos. 03–1269, 03–1286.

United States Court of Appeals, Federal Circuit.

DECIDED: April 8, 2004.

Carl F. Manthei, Attorney at Law, of Boulder, Colorado, argued for plaintiff-appellant.

Mark W. Fischer, Faegre & Benson LLP, of Boulder, Colorado, argued for defendants-cross appellants. With him on the brief was Scott Holwick.

Before NEWMAN, LOURIE, and DYK, Circuit Judges.

Opinion for the court filed by Circit Judge LOURIE. Opinion dissenting in part filed by Circuit Judge DYK.

LOURIE, Circuit Judge.

Edward Phillips appeals from the decision of the district court granting the defendants' motion for summary judgment of noninfringement of U.S. Patent 4,677,798. *Phillips v. AWH Corp.*, No. 97–MK–212 (D.Colo. Jan. 22, 2003) ("*Noninfringement Decision*"). Phillips also appeals from the dismissal of his claim of trade secret misappropriation. *Phillips v. AWH Corp.*, No. 97–N–212 (D.Colo. Mar. 22, 1999) ("*Trade Secret Misappropriation Decision*"). For the reasons set forth below, we affirm.

## BACKGROUND

Phillips is the inventor and owner of the '798 patent, which is directed to vandalism-resistant building modules consisting of modular wall panels. The invention is useful in the field of prison construction because the panels exhibit desirable sound and fire resistance, impact resistance (*i.e.*, against bullets, bombs), and axial and lateral load bearing qualities. A key issue in this case relates to the meaning of the term "baffle." The use of the term "baffle" is typified in Claim 1, which reads as follows:

Building modules adapted to fit together for construction of fire, sound and impact resistant security barriers and

rooms for use in securing records and persons, comprising in combination, an outer shell ..., sealant means ..., and *further means disposed inside the shell for increasing its load bearing capacity comprising internal steel baffles extending inwardly from the steel shell walls.* '798 patent, col. 6, ll. 22–34 (emphasis added).

In 1989, Phillips entered into an agreement with AWH Corporation, Hopeman Brothers, Inc., and Lofton Corporation (collectively "AWH") for AWH to market and sell Phillips' invention. That agreement ended in 1990, and in early 1991, Phillips obtained an AWH sales brochure which convinced him that AWH was continuing to use Phillips' technology without his consent. From January 1991 to June 1992, the parties exchanged letters regarding Phillips' allegations of patent infringement and trade secret misappropriation, but no resolution was ever reached.

On February 3, 1997, Phillips sued AWH in the United States District Court for the District of Colorado, asserting that AWH had misappropriated his trade secrets and had infringed claims 1, 21, 22, 24, 25, and 26 of the '798 patent. In March 1999, the court granted AWH's motion for partial summary judgment that Phillips' claim for trade secret misappropriation was barred by Colorado's three-year statute of limitations, and it dismissed that claim. The court reasoned that Phillips knew or should have known of his alleged injury and failed to exercise due diligence in pursuing his claim of misappropriation. *Trade Secret Misappropriation Decision,* slip op. at 7. The court also decided that Phillips had not presented evidence that AWH engaged in wrongful conduct preventing him from discovering that claim. *Id.* at 7–8.

In November 2002, the district court issued its construction of the '798 patent's claims. *Phillips v. AWH Corp.,* No. 97–MK–212 (D.Colo. Nov. 22, 2002) (*"Claim Construction Order"*). The term "baffle" was of primary importance, and although it was not expressly defined in the written description, the parties stipulated that the term meant a "means for obstructing, impeding, or checking the flow of something." *Id.,* slip op. at 23. In spite of that stipulation, the court concluded that the term was ambiguous because "it does not identify the substance or force the flow of which it is intended to check, impede, or obstruct." *Id.* Although the court acknowledged that "[t]he subject language includes a means and a structure," it decided that the claim language "does not adequately describe the *function* of the structure." *Id.* at 23–24 (emphasis added). The district court therefore concluded that the claim contains means-plus-function language subject to construction under 35 U.S.C. § 112, ¶ 6 and is limited by the specification. *Id.* at 24.

The court found that the specification referred to properties of sound and heat resistance, as well as fire resistance and projectile deflection. Particularly, the court noted that "every textual reference in the Specification and its diagrams show baffle deployment at an angle other than 90° to the wall faces," and that the figures in the specification all displayed baffles placed in interlocking positions. *Id.* The court therefore concluded that a "baffle," within the context of the '798 patent, has two required properties: first, baffles extend inward from the shell walls at oblique or acute angles; and second, baffles form an intermediate, interlocking barrier in the interior of the wall module. *Id.* at 25.

Phillips conceded that he could not prove infringement under the court's claim construction, and the court granted AWH's motion for summary judgment of noninfringement. *Decision,* slip op. at 1. Phillips timely appeals from both the summary

judgment of noninfringement and the dismissal of his trade secret misappropriations claim. AWH cross-appeals, challenging the district court's treatment of certain claim terms in its claim construction. We have jurisdiction over the appeals pursuant to 28 U.S.C. § 1295(a)(1), because a claim of patent infringement was well-pleaded in the complaint. *See Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.,* 535 U.S. 826, 122 S.Ct. 1889, 153 L.Ed.2d 13 (2002). We have pendent jurisdiction over the claim of trade secret misappropriation. *See Roton Barrier, Inc. v. Stanley Works,* 79 F.3d 1112, 1116 (Fed.Cir.1996).

## DISCUSSION

■ We review a district court's grant of summary judgment *de novo,* reapplying the same standard used by the district court. *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.,* 149 F.3d 1309, 1315 (Fed.Cir.1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

### I. *Patent Infringement*

■ Determination of patent infringement requires a two-step analysis. "First, the court determines the scope and meaning of the patent claims asserted ..., then the properly construed claims are compared to the allegedly infringing device." *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed.Cir.1998) (en banc) (citations omitted). Step one, claim construction, is an issue of law, *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 970–71 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), that we review *de novo, Cybor,* 138 F.3d at 1456. Step two, comparison of the claim to the accused device or method,

requires a determination that every claim limitation or its equivalent is found in the accused device. *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17; 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Those determinations are questions of fact. *Bai v. L & L Wings, Inc.,* 160 F.3d 1350, 1353 (Fed.Cir.1998).

On appeal, Phillips argues that the term "baffle" is not in means-plus-function language and should not be limited to structures described in the specification. Instead, he urges that the "heavy presumption" that "baffle" should be accorded its ordinary and customary meaning was not clearly and unequivocally rebutted. Phillips asserts that the district court improperly read limitations from the specification into the claims—that baffles must be positioned at an acute or obtuse angle to wall faces, and that baffles must form an intermediate, interlocking barrier. Next, for support, Phillips points to descriptions in the '798 patent of baffles that he states are at an angle of 90° to the wall face and of baffles that do not form an interlocking pattern. Finally, Phillips asserts that the district court improperly defined the term "impact resistance" to refer only to deflection of bullets, bombs, or other projectiles. He argues that the term "impact" is used in both the conjunctive and the disjunctive with the term "projectile deflection," which he believes indicates that the term "impact" takes on a broader meaning and that the court's construction was unduly narrow.

AWH responds that the district court correctly construed the term "baffle." The court, AWH argues, properly looked to the specification to determine the scope of the claimed invention. To support the court's construction, AWH emphasizes statements in the '798 patent that purport to distinguish the invention from the prior

art, *e.g.*, "impact resistance to great forces such as explosions and projectiles." AWH asserts that the key innovative feature of the invention is the baffle configuration, including both the angled orientation and the interlocking pattern limitations, and that the court was correct to interpret the scope of the claims accordingly. Additionally, AWH argues that the term "impact resistance" is used throughout the specification with particular reference to bullets, bombs, and other projectiles.

We agree with AWH that the district court ultimately construed the meaning of the term "baffle" properly. Section 112, ¶ 6 provides that:

> an element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6 (2000). Whether a claim limitation is in means-plus-function format according to 35 U.S.C. § 112, ¶ 6 is a matter of claim construction and thus a question of law that we review *de novo. Personalized Media Communications, LLC v. Int'l Trade Comm'n,* 161 F.3d 696, 702 (Fed.Cir.1998). We have held that use of the word "means" creates a presumption that § 112, ¶ 6 applies. *See York Prods., Inc. v. Cent. Tractor,* 99 F.3d 1568, 1574 (Fed.Cir.1996). Conversely, we have also held that the failure to use the word "means" creates a presumption that § 112, ¶ 6 does not apply. *See Mas–Hamilton Group v. LaGard, Inc.,* 156 F.3d 1206, 1213 (Fed.Cir.1998). "In deciding whether either presumption has been rebutted, the focus remains on whether the claim as properly construed recites sufficiently defi-

nite structure to avoid the ambit of § 112, ¶ 6." *Personalized Media Communications,* 161 F.3d at 704.

At the outset, we determine that "baffle" is not in means-plus-function language. The claim term in question does not expressly use the word "means,"[1] thereby invoking the presumption that § 112, ¶ 6 does not apply. Moreover, the word "baffle" is a sufficient recitation of structure, which carries its ordinary meaning of "something for deflecting, checking, or otherwise regulating flow." *Webster's Third New International Dictionary* 162 (1993). Its particular structure is not relevant here. Simply because the claims do not identify the matter upon which the baffle acts does not, by itself, rebut that presumption or render the term subject to means-plus-function treatment. Our case law has focused on the structure of claim terms when determining whether § 112, ¶ 6 applies. *See, e.g., Personalized Media Communications,* 161 F.3d at 705 (stating that "an adjectival qualification . . . placed upon otherwise sufficiently definite structure . . . does not make the sufficiency of that structure any less sufficient for purposes of § 112, ¶ 6," but rather "further narrows the scope of those structures covered by the claim and makes the term more definite"). Furthermore, the intrinsic and extrinsic evidence fully and repeatedly support the meaning that baffles check, impede, and obstruct heat, sound, and projectiles such as bullets and bombs. Accordingly, we decide that "baffle" is not means-plus-function language.

However, our analysis does not end there—while the district court erroneously considered the term "baffle" to be in means-plus-function format, we must still read the claims in view of the specification

---

1. While coincidental, the use of the word "means" in the stipulated definition of "baffle" does not automatically invoke means-plus-function treatment. The district court was not baffled by that usage and was correct not to rely on that word in its reasoning.

and determine whether the patentee has otherwise limited the scope of the claims with respect to the term "baffle." The ordinary meaning of a term must be considered in view of the intrinsic evidence: the claims, the specification, and the prosecution history. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342–43 (Fed.Cir. 2001). "[A] claim term will not carry its ordinary meaning if the intrinsic evidence shows that the patentee distinguished that term from prior art on the basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366–67 (Fed. Cir.2002). Thus, we look to the specification "to ascertain the meaning of a claim term as it is used by the inventor in the context of the entirety of his invention." *Comark Communications v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed.Cir.1998).

The '798 patent specification is rife with references to impact resistance, especially against projectiles such as bullets and bombs. The abstract describes the invention as "[v]andalism resistant building modules ... [that] provide ... significant resistance to noise, fire and impact" and specifically states that "[t]he modules contain strengthening and bullet deflecting internally directed steel baffles." It further explains that steel panels "form the internal baffles at angles for deflecting bullets." In the section marked "Disclosure of the Invention," the patentee states that the baffles are "disposed at such angles that bullets which might penetrate the outer steel panels are deflected." '798 patent, col. 2, ll. 13–15.

Additionally, the specification addresses and distinguishes the prior art, asserting that "[i]n secured facilities, and protective barriers, it is feasible that projectiles may be encountered, such as bullets from high powered guns or bomb fragments." *Id.* at

col. 3, ll. 26–28. It continues by stating that "[t]here have not been effective ways of dealing with these powerful impact weapons with inexpensive housing in the prior art." *Id.* at col. 3, ll. 28–31.

The specification further contains a Figure 6, explaining that if bullets "were to penetrate the outer steel shell wall, the baffles are disposed at angles which tend to deflect the bullets." *Id.* at col. 5, ll. 17–19. Figure 12 is also shows that "[t]ypical wall characteristics include bullet and explosion resistance." *Id.* at col. 5, ll. 67–68. Finally, the patentee concludes that the "invention has advanced the art by providing modular buildings and modules of high strength [and] bullet resistance," adding that "[u]niquely the advantages of steel shell modules are combined with thermal and acoustical isolation of two spaced walls and protection against *bullet penetration of the walls.*" *Id.* at col. 6, ll. 10–17 (emphasis added).

We are not persuaded by Phillips' arguments that the specification also contains descriptions of baffles that are 90° to the wall face. To support his assertion, Phillips points to segments of baffles in Figure 7 as oriented perpendicular to the walls. However, those segments merely support the predominant angled portions that impart the bullet deflection properties that Phillips identifies as essential to his invention and are not identified as baffles.

■ From the specification's explicit descriptions of the invention, we conclude that the patentee regarded his invention as panels providing impact or projectile resistance and that the baffles must be oriented at angles other than 90°. Baffles directed at 90° cannot deflect projectiles as described in the '798 patent, and, in any event, are disclosed in the prior art. *See, e.g.*, U.S. Patents 2,717,664 and 4,505,101. The term "baffle" is used in a consistent manner throughout all the asserted claims,

so our foregoing analysis applies equally to all those claims. Because we so construe the '798 patent, and because AWH does not use acute or obtuse angles in its panels, we affirm the district court's judgment of noninfringement.

The dissent-in-part argues that we have interpreted the claims erroneously by focusing only on the "preferred embodiment." We disagree. Inspection of the patent shows that baffles angled at other than 90° is the *only* embodiment disclosed in the patent; it is the invention. It is impossible to derive anything else from the specification.

The specification indicates at column 1, line 65 to column 2, line 15 under DISCLOSURE OF THE INVENTION that

> This invention provides modular equipment for formulating detention structures comprising of [sic] a multiplicity of interchangeable modules of similar size having steel plate inner and outer wall sections defining end closures and internally directed load supporting baffles. The modules comprise three steel plate wall panel sections of partially triangular cross section shape positioned to provide the internally directed baffles....

> The baffles provided by the triangular shaped panels to extend inwardly from an intermediate interlocking barrier with the baffles disposed at such angles that bullets which might penetrate the outer steel panels are deflected.

The only actual references to baffles in the specification are to numbers **16, 26, 27, 30, 31**, all of which are angled in the figures of the patent. It further states at column 5, lines 5–19: *"The* additional feature of this module is that it gives additional protection against projectile penetration. Thus it may been seen from FIG. 6 that if a bullet were to penetrate the outer steel shell wall, the bullets are disposed at angles which tend to deflect

the bullets." (Emphasis added.) None of the figures shows any baffle that is not angled at an angle other than 90°.

It is true that claims with the non-restrictive term "baffles" were allowed. However, the patent specification is intended to support and inform the claims, and here it makes it unmistakably clear that the invention involves baffles angled at other than 90°. It is in the interests of a sound patent system and inventors, as well as the public, to hold inventors to their disclosures. The trial judge correctly perceived this need, albeit mistakenly relying on the means-plus-function ground, and interpreted the claims in accordance with the specification.

## II. *Misappropriation of Trade Secrets*

 The district court dismissed the plaintiff's claim of misappropriation of trade secrets on a statute of limitations ground. We agree with the court's decision on that basis. Federal courts apply the trade secret law of the state in which they sit. *See Water Techs. Corp. v. Calco, Ltd.,* 850 F.2d 660, 670 (Fed.Cir.1988); *Sun Studs, Inc. v. Applied Theory Assocs., Inc.,* 772 F.2d 1557, 1561 (Fed.Cir.1985). The Colorado Uniform Trade Secrets Act ("CUTSA"), Colo.Rev.Stat. §§ 7–74–101 to –110 (1998), applies to claims of trade secret misappropriation brought under Colorado law, including those in federal courts. *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 847 (10th Cir. 1993). Here, there is no dispute between the parties that Colorado trade secret law controls. The district court's interpretation of Colorado trade secret law is a matter of law that we review de novo. *See Salve Regina Coll. v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

Colorado state law provides a three-year statute of limitations period for claims of trade secret misappropriation.

> An action for misappropriation of a trade secret shall be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For purposes of this section, a continuing misappropriation constitutes a single claim.

Colo.Rev.Stat. § 7–74–107 (1998). The Colorado Supreme Court has stated, with respect to actions in tort, that "[t]he statute of limitations begins to run when the claimant has knowledge of facts which would put a reasonable person on notice of the nature and extent of an injury and that the injury was caused by the wrongful conduct of another." *Mastro v. Brodie*, 682 P.2d 1162, 1168 (Colo.1984). "[T]he cause of action does not accrue until the plaintiff knows, or has reason to know, in the exercise of reasonable diligence, all material facts essential to show elements of that cause of action." *City of Aurora v. Bechtel Corp.*, 599 F.2d 382, 389 (10th Cir. 1979).

Phillips argues that he did not "discover" AWH's alleged misappropriation until August 1996 so that the three-year statute of limitations did not expire before he filed the lawsuit. He asserts that the 1991 and 1992 correspondence lacked particular details of AWH's alleged use of Phillips' technology and that Phillips was unable to discern the true nature of his injury. Phillips advances the argument that accrual of the tort of trade secret misappropriation under Colorado law occurs only when both the injury and its cause are known. Because he did not know of AWH sales of the accused technology until August 1996, Phillips alleges that he could not determine recoverable damages and that his claim was incomplete. Moreover, Phillips raises equitable tolling arguments based on mental disability and AWH's assurances that it was not using Phillips' technology.

In response, AWH highlights the strong, specific language Phillips used in his 1991 and 1992 letters, all of which indicate that his awareness of possible trade secret misappropriation had risen well above mere suspicion. AWH argues that in his letters, Phillips indicated with particularity the technology that he believed AWH was misappropriating, citing the AWH sales brochure that Phillips had in his possession. The appellees further assert that under Colorado state law, mental disability must exist at the time such right accrues for equitable tolling to operate. AWH states that its assurances to Phillips amounted to mere denial of liability and not wrongful conduct implicating the doctrine of equitable tolling.

■ We agree with the district court that Phillips' claim of trade secret misappropriation is time-barred by Colorado state law. Phillips possessed an AWH sales brochure that detailed the companies' alleged use of his technology and prompted correspondence between the parties. In his letters to AWH, Phillips referred to the brochure's contents, identified specific technology that he believed was being used without his permission, and detailed an explicit timeline of events leading to AWH's alleged misappropriation. Phillips even used terms such as "steal" and "misappropriated," indicating that he was very much aware of AWH's actions, how they related to his technology, and how they affected his own interests, financial or otherwise. Phillips' possession of the AWH brochure and his letters convincingly indicate that Phillips knew or should have known facts sufficient to support his claim of misappropriation. That Phillips was not aware of the particular use of his technology, of AWH's specific sales, or of the exact monetary damage inflicted is not of conse-

quence. One does not need to know the specific damage inflicted in order to bring a claim. *See* Colo.Rev.Stat. § 7–74–107 (1998); *Gates Rubber Co.*, 9 F.3d at 847. As a result, we conclude that Phillips' claim for trade secret misappropriation accrued prior to the critical date, February 3, 1994—three years before the commencement of suit in the district court, and hence out of time.

 As for Phillips' equitable tolling arguments, we are not convinced that his alleged mental disability warrants exercise of the doctrine of equitable tolling because it did not exist when Phillips discovered the alleged misappropriation. *See* Colo.Rev.Stat. § 13–81–103 (2002). Furthermore, courts interpreting Colorado law have held that "[t]he mere denial of liability, which is what an assertion of independent development amounts to in the face of a trade secret misappropriation claim, is not 'wrongful conduct' which implicates the doctrine of equitable tolling." *Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1221 (10th Cir.2000) (citing *Dean Witter Reynolds, Inc. v. Hartman*, 911 P.2d 1094, 1096 (Colo.1996)). We therefore conclude that equitable tolling does not apply and that Phillips' claim of trade secret misappropriation is barred by Colorado's statute of limitations.

### III. *Cross–Appeal*

 AWH disputes several additional claim terms in its cross-appeal. We dismiss the cross-appeal as improper because the district court entered a judgment of noninfringement in favor of AWH. A party has no right of cross-appeal from a decision in its favor. *Lindheimer v. Ill. Bell Tel. Co.*, 292 U.S. 151, 176, 54 S.Ct. 658, 78 L.Ed. 1182 (1934). Similarly, a party who prevails on noninfringement has no right to file a "conditional" cross-appeal to introduce new arguments or challenge a claim construction, but may simply assert

alternative grounds in the record for affirming the judgment. *Bailey v. Dart Container Corp. of Mich.*, 292 F.3d 1360 (Fed.Cir.2002); *Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 822 n. 1 (Fed.Cir.1989).

### CONCLUSION

We have considered Phillips' remaining arguments and find them unpersuasive. We therefore conclude that the district court properly granted summary judgment in favor of AWH on Phillips' patent infringement and trade secret misappropriation claims, and we accordingly affirm. We dismiss AWH's cross appeal as improper and, in any event, moot.

*AFFIRMED.*

DYK, Circuit Judge, dissenting-in-part.

I respectfully dissent from the majority's affirmance of the district court's judgment of non-infringement. The majority decision effectively limits the claims to the preferred embodiment, contrary to our recent decision in *Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed.Cir.2004), and numerous other decisions of this court. In doing so, the majority decision attempts to work a major and unfortunate change in our recent claim construction jurisprudence.

The issue here is the meaning of the claim term "baffles," which appears in each of the asserted claims of the '798 patent. I agree that "baffles" is not a means-plus-function term because, as the majority notes, "the word 'baffle' is a sufficient recitation of structure." *Ante* at 1212. There is no dispute as to the plain meaning of the term "baffles." The parties have stipulated that "baffles" are a "means for obstructing, impeding, or checking the flow of something." *Phillips v. AWH Corp.*, No. 97–MK–212, slip op. at 23 (D.Colo. Nov. 22, 2002); *see also Webster's Third New International Dictionary*

162 (2002) ("*Webster's*") (defining baffles as "something for deflecting, checking, or otherwise regulating flow"). Indeed, the majority agrees that this is the "ordinary meaning." *Ante* at 1212.

My dispute is with the majority's imposition of an additional structural limitation based upon the patentee's preferred embodiments that limits baffles to structures "oriented at angles other than 90°." *Ante* at 1213. This is contrary to the plain meaning, and there is no suggestion that the patentee, acting as his own lexicographer, gave a special meaning to the term baffles. The majority marshals three arguments in support of limiting the claims to baffles oriented at angles other than 90°. None is convincing.

First, the majority concludes that baffles must be limited to structures oriented at angles other than 90° because "the patentee regarded his invention" as such, *ante* at 1212–13, describing only such baffles in the specification. It states that "baffles angled at other than 90° is the *only* embodiment disclosed in the patent; it is the invention." *Ante* at 1213. We however have "expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Liebel–Flarsheim*, 358 F.3d at 906.

Our precedent also makes clear that "this court interpret[s] the pertinent claim language narrowly, not merely because the specification d[oes] not describe a broader embodiment, but because the specification, claim, or prosecution history ma[kes] clear that the invention is limited to a particular structure." *Liebel–Flarsheim*, 358 F.3d at 907–08. As in *Liebel–Flarsheim*, the specification here does "not suggest that [baffles oriented at angles other than 90°] are

an essential component of the invention, nor is there any language . . . in the specification, that disclaims the use of the invention in the absence of [baffles oriented at angles other than 90°]." *Id.* at 908; *see also Sunrace Roots Enter. Co. v. SRAM Corp.*, 336 F.3d 1298, 1305 (Fed.Cir.2003). Nor is this a case like *SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337 (Fed.Cir. 2001), where the specification specifically disclaimed non-disclosed embodiments by stating that the "structure defined above is the basic . . . structure for *all embodiments of the present invention contemplated and disclosed herein.*" *Id.* at 1343 (quoting the patents at issue). The specification of the '798 patent contains no such language clearly limiting the claims to a specific structure.

Second, the majority contends that the baffles must be limited to structures oriented at angles other than 90° in order to realize the invention's *purpose* of providing panels that are impact or projectile resistant. The theory for this departure from the broader plain meaning is that "[b]affles directed at 90° cannot deflect projectiles as described in the '798 patent," *ante* at 1213, and projectile deflection is critical because the "specification is rife with references to impact resistance, especially against projectiles such as bullets and bombs," *ante* at 1212. The specification however merely identifies impact resistance as one of several objectives of the invention. The patent also identifies other objectives including "high load bearing strength" using "thinner guage [sic] steel panels," '798 patent, col. 3, ll.16–25, and "thermal and acoustical isolation of two spaced walls," *id.* at col. 6, l.16.[2] As we made clear in *Liebel–Flarsheim*, "[t]he fact that a patent

---

2. This "thermal and acoustical isolation" refers to the lack of a continuous link across the interior of the panels. Since the baffles on each side of the panel's interior do not physically touch, the flow of sound and heat from one side to the other is restricted.

asserts that an invention achieves several objectives does not require that each of the claims be construed as limited to structures that are capable of achieving all of the objectives." 358 F.3d at 908; *see also E–Pass Techs., Inc. v. 3Com Corp.,* 343 F.3d 1364, 1370 (Fed.Cir.2003). So too, "[a]bsent a clear disclaimer of particular subject matter, the fact that the inventor may have anticipated that the invention would be used in a particular way does not mean that the scope of the invention is limited to that context." *Liebel–Flarsheim,* 358 F.3d at 909 (quoting *Northrop Grumman Corp. v. Intel Corp.,* 325 F.3d 1346, 1355 (Fed.Cir.2003)) (alteration in original). Here baffles that are oriented at 90°, and thus excluded under the majority's construction, would still achieve the load bearing and thermal-acoustical isolation objectives taught in the specification. The identification of an objective that is not met when the claim is given its ordinary meaning is not in itself a disclaimer sufficient to narrow that ordinary meaning. This is particularly so here where impact or projectile resistance is separately identified as a claim limitation in claims 1–21, 23 and 24, thereby suggesting that the baffles and impact resistance limitations are separate.

Finally, the majority relies on the fact that "[b]affles directed at 90° ... in any event, are disclosed in the prior art," *ante* at 1213, perhaps suggesting that the claim would be invalid if given a broader meaning. But the fact that a feature of the invention may have been described in the prior art hardly raises serious questions of invalidity. *See, e.g., Schering Corp. v. Geneva Pharms., Inc.,* 339 F.3d 1373, 1377 (Fed.Cir.2003) ("[A]nticipation [occurs] if a single prior art reference discloses *each and every* limitation of the claimed invention." (emphasis added)). Even if there were such questions, this also is no excuse to depart from the plain meaning of the claims. The "axiom" that claims should be construed to preserve validity is not an invitation to narrowly construe unambiguous claim language contrary to its plain meaning. *See, e.g., Liebel–Flarsheim,* 358 F.3d at 911; *Elekta Instrument S.A. v. O.U.R. Scientific Intl., Inc.,* 214 F.3d 1302, 1309 (Fed.Cir.2000). Nor, was there here an effort to distinguish the prior art on the basis that prior art baffles were oriented at 90° angles. *See SciMed,* 242 F.3d at 1343.

Simply put, there is no reason to supplement the plain meaning of the claim language with a limitation from the preferred embodiment. By limiting "baffles" to structures "oriented at angles other than 90°," *ante* at 1213, the majority has misconstrued not only the claims, but our precedent as well. Limiting the claims to the preferred embodiment as the majority has done is quite inconsistent with our cases which consistently reject the notion that the claims are limited to the preferred embodiment. *Liebel–Flarsheim,* 358 F.3d at 906, *see also, e.g., ACTV, Inc. v. Walt Disney Co.,* 346 F.3d 1082, 1091 (Fed.Cir. 2003); *E–Pass,* 343 F.3d at 1369; *Apex Inc. v. Raritan Computer, Inc.,* 325 F.3d 1364, 1373 (Fed.Cir.2003); *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1327 (Fed.Cir.2002).

## II

Discarding the majority's approach of limiting the claims to the preferred embodiment, the question remains as to the correct construction of the claims. Since there is no argument here that one of skill in the art would ascribe a specialized meaning to the term baffles, and there has been no disclaimer in the specification or prosecution history, the general purpose dictionary definition, "something for deflecting, checking, or otherwise regulating flow," *Webster's* at 162, applies. *See Texas Digital Sys., Inc. v. Telegenix, Inc.,* 308

F.3d 1193, 1203–04 (Fed.Cir.2002); *see also, e.g., Kumar v. Ovonic Battery Co.,* 351 F.3d 1364, 1367 (Fed.Cir.2003); *E–Pass Techs.,* 343 F.3d at 1367–68.

The district court's grant of summary judgment should be vacated because it was based solely on the erroneous construction of baffles and the patentee's concession that the accused product did not contain baffles as so defined. I do not reach the district court's construction of other claim terms or the question of whether summary judgment of non-infringement could or should be granted on other grounds. I agree with the majority opinion on the trade secret claim.