**CCS FITNESS, INC., Plaintiff–Appellant,**

v.

**BRUNSWICK CORPORATION and its Division Life Fitness, Defendants Appellees.**

No. 01–1139.

United States Court of Appeals, Federal Circuit.

May 3, 2002.

Rehearing Denied May 30, 2002.

Paul T. Meiklejohn, Dorsey & Whitney LLP, of Seattle, WA, argued for plaintiff-appellant. With him on the brief was David M. Jacobson.

Linda F. Callison, Colley Godward LLP, of Palo Alto, CA, argued for defendant-appellee. With her on the brief was Ricardo Rodriguez. Of counsel on the brief was Bruce A. Featherstone, Featherstone De-Sisto LLP, of Denver, CO.

Before MAYER, Chief Judge, MICHEL and LOURIE, Circuit Judges.

MICHEL, Circuit Judge.

Plaintiff–Appellant CCS Fitness, Inc. appeals from a decision by the United States District Court for the District of Colorado holding that the claim limitation "reciprocating member" as used in the asserted patents does not cover anything more than the single-component straight bar depicted in the patents' drawings. As a result, the district court concluded, the accused infringer Life Fitness warranted summary judgment of non-infringement, since its accused exercise machines' "pedal lever" uses a multi-component, curved bar.

Because the claim term "member" has an established meaning and because noth-ing in the intrinsic evidence narrows that claim term's ordinary meaning, we hold that "member" does encompass a multi-component, curved beam or lever. Thus, we reverse. To the extent that the district court's analysis of the doctrine of equivalents relied on the construction of a claim term other than "reciprocating member," we vacate that portion of the decision and remand. To the extent it relied on that term, we reverse.

I

This case involves a stationary exercise device more commonly known as an elliptical trainer. As shown by the preferred embodiment pictured in CCS Fitness' patents, elliptical trainers comprise a vertical frame attached to a base structure at a right angle, with the base structure resting on the floor. A user approaches this machine from the rear, where he mounts two footpads, each of which lies at the end of a "foot member," a structure that extends and attaches to the vertical frame.

The foot members also intersect with "reciprocating members" (432, below), longitudinal structures that run "substantially parallel" to the floor, with one end of that structure attached to a shaft and crank system located at the vertical-frame end of the machine. The other end of a "member" has "rollers" or wheels attached to it so that the members can "reciprocate" or move back and forth on the floor as the user pushes up and down (or "climbs") on the machine's footpads. As the user does so, the front end of the member rotates around the crankshaft, thereby causing the reciprocating member to rotate in a circular motion before gradually changing into a linear motion. The elliptical trainer generally allows a user to engage in high-intensity cardiovascular exercise without putting undue stress on the user's knees.

FIG. 5

CCS Fitness owns by assignment the three combination patents that claim this stationary exercise device: U.S. Patent Nos. 5,924,962 ('962 patent); 5,938,567 ('567 patent); and 5,683,333 ('333 patent). Claims 9 and 10 from the '962 patent and claims 1 and 2 of the '567 patent are representative:

9. An apparatus for exercising comprising: a frame having a base portion adapted to be supported by a floor; first and second *reciprocating members,* each reciprocating member having a first and a second end, a portion of said first and second reciprocating members being adapted for substantially linear motion; . . . .

10. The exercising device according to claim 9 wherein said coupler member attaching means comprises: a first element attached at one end to said pulley proximate said pivot axis and at its other end to said second end of said first *reciprocating member;* and a second element attached at one end to said pulley proximate said pivot access and at its other end to said second end of said second reciprocating member . . . .

1. An apparatus for exercising comprising: a frame having a base portion adapted to be supported by a floor; first and second *reciprocating members,* each reciprocating member having a rear support and a front end; . . . .

2. The exercise apparatus according to claim 1 wherein said rear support comprises a roller attached to each *reciprocating member* and adapted to rollably [sic] engage the base portion of said frame.

U.S. Patent No. 5,924,962, col. 8, lines 17–24, 42–49; U.S. Patent No. 5,938,567, col. 6, lines 56–62, col. 7, lines 29–32 (emphases added). Besides the description set forth above, nothing in the claim language of the three patents describes the shape of the reciprocating members or whether it consists of a single-component structure only, as opposed to a structure consisting of multiple components.

In addition, nothing in the respective patents' abstract, summary of invention or detailed description sets forth the shape or makeup of these structures. The drawings for the patents' preferred embodiments depict the reciprocating members as a single-component, straight-bar structure. The prosecution history, meanwhile, discusses only the "angle" taken by a "foot platform relative to a reciprocating member" and the members' wheels and attachment to the crankshaft.

In April 1998, CCS Fitness sued Brunswick Corporation and its division Life Fitness (collectively referred to as "Life Fitness"), alleging that two of Life Fitness' elliptical exercisers literally infringed claims 9, 10 and 12 of the '962 patent, claims 1—5 of the '567 patent and further infringed, under the doctrine of equivalents, claims 1—6 of the '333 patent. The parties do not dispute that, in lieu of "reciprocating members," Life Fitness' accused machines use "pedal levers," structures that curve upward as they approach the frame end of the machine. The "pedal levers" also use multiple components to attach to and rotate around a crankshaft, not a single component.

Both parties moved for summary judgment, with CCS Fitness arguing that the reciprocating members contained in each of the claims at issue comprised more than simply a single-component, straight bar— they also included the curved, multi-component structure used in the accused devices. The parties agreed that "reciprocating" referred to the "back and forth" movement of the "member"; but the district court disagreed with CCS Fitness' proposed construction of "member," reasoning that the claim language never alluded to the reciprocating members as having multiple parts. Further, said the district court, the "illustrations in the three patents-in-suit show a reciprocating member

... made of one contiguous piece of hard material, with no connections or joints."

As to the shape of the reciprocating members, the court noted that nothing in the claims, specifications or prosecution history indicates what shape these structures had to take; but again, it reasoned that the "figures [of the claimed invention] illustrate a straight bar." Citing *Bocciarelli v. Huffman*, 43 C.C.P.A. 873, 232 F.2d 647, 652 (1956), the district court maintained that if CCS Fitness wanted to claim a device whose reciprocating member included a curved, multi-component structure, its patents should have included an illustration that showed these embodiments. To shore up this analysis, the district court then substituted the language "single straight bars that move back and forth" in lieu of the claims' use of "reciprocating members," concluding that its interpretation was "logical" when read in that light. Accordingly, because the accused devices used a curved reciprocating member that consisted of multiple components, the district court concluded that it did not literally infringe CCS Fitness' '962 or '567 patents as a matter of law, thereby entitling Life Fitness to summary judgment.

The district court also granted summary judgment for Life Fitness on CCS Fitness' claim that the accused exercise machines infringed the '333 patent under the doctrine of equivalents. In a brief analysis, the district court did not identify or construe the claim language at issue in this patent. Instead, it noted that the "Patent illustrations and CCS video" showed that the "CCS machine" caused its reciprocating members to rotate around the crankshaft in a "perfect circle." By contrast, reasoned the court, the "circle" created by the accused machines used "multiple links" to generate that result, leading the court to conclude that CCS Fitness could not

establish that its invention and the accused devices relied on the "same way to create substantially the same result."

CCS Fitness appeals, arguing again that the ordinary meaning of the term "reciprocating member"—whether defined by an ordinary or a technical dictionary—covers a curved structure consisting of one or more components. In support of this argument, CCS Fitness directs our attention to what it calls the "Alternative A" and "Alternative B" set of components used by the accused devices. Life Fitness counters that (among other things) the specification and the drawings can limit the scope of the claimed reciprocating members, since "member" is a vague term whose scope requires clarification from the specification and drawings. To support this argument, Life Fitness points to an affidavit from an expert who avers that "member" has no customary meaning to one of ordinary skill, thereby necessitating resort to the specification. The record, however, also contains an affidavit from the inventor who asserts that "member" has a broad, ordinary meaning in the relevant art.

Alternatively, Life Fitness suggests that the claimed "member" is so lacking in structure that it essentially constitutes a means-plus-function clause, see 35 U.S.C. § 112 ¶ 6, meaning it would cover nothing more than the corresponding structure (and its equivalents) disclosed in the specification and drawings. So too does it suggest that statements in the prosecution history limit the scope of the claimed "member" so that it could not encompass the accused device's "pedal levers." Last, Life Fitness contends that CCS Fitness is presenting a different claim construction theory on appeal than it did to the district court, as it never pressed the "Alternative A and B" part of its argument on the district court. Consequently, Life Fitness urges us to hold that CCS Fitness has waived its current claim construction argument.

## II

We have jurisdiction under 28 U.S.C. § 1295(a)(1) (1994) and review the district court's summary judgment ruling de novo. *Pall Corp. v. PTI Tech. Inc.*, 259 F.3d 1383, 1389, 59 USPQ2d 1763, 1767 (Fed. Cir.2001). In so doing, we draw all reasonable factual inferences in favor of the nonmoving party. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 988, 50 USPQ2d 1607, 1609 (Fed.Cir.1999).

## A

Patent infringement requires a two-step analysis. *Id.* First, a court must determine as a matter of law the correct scope and meaning of a disputed claim term. *Id.* We review this aspect of the infringement analysis de novo. *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1338, 51 USPQ2d 1295, 1298 (Fed.Cir. 1999). Second, the analysis requires a comparison of the properly construed claims to the accused device, to see whether that device contains all the limitations, either literally or by equivalents, in the claimed invention. *Johnson Worldwide*, 175 F.3d at 988, 50 USPQ2d at 1609; *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1247–48, 48 USPQ2d 1117, 1120 (Fed.Cir.1998). As in this case, the litigants frequently do not dispute the structure of the accused device, meaning the infringement analysis often turns on the interpretation of the claims alone. *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1350, 58 USPQ2d 1076, 1078 (Fed.Cir.2001); *Wang Labs., Inc. v. America Online Inc.*, 197 F.3d 1377, 1381, 53 USPQ2d 1161, 1163 (Fed. Cir.1999).

■ Claim interpretation begins with an examination of the intrinsic evidence, *i.e.*, the claims, the rest of the specification and, if in evidence, the prosecution history. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339–40, 59 USPQ2d 1290, 1293–94 (Fed. Cir.2001); *O.I. Corp. v. Tekmar Co. Inc.*, 115 F.3d 1576, 1581, 42 USPQ2d 1777, 1780 (Fed.Cir.1997). Courts may also use extrinsic evidence (*e.g.*, expert testimony, treatises) to resolve the scope and meaning of a claim term. *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378, 49 USPQ2d 1065, 1068 (Fed.Cir.1998); *Kegel Co., Inc. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1426, 44 USPQ2d 1123, 1127 (Fed. Cir.1997).

■ Generally speaking, we indulge a "heavy presumption" that a claim term carries its ordinary and customary meaning. *Johnson Worldwide*, 175 F.3d at 989, 50 USPQ2d at 1610; *accord Gart*, 254 F.3d at 1341, 59 USPQ2d at 1295; *Kegel*, 127 F.3d at 1427, 44 USPQ2d at 1127. "[I]f an apparatus claim recites a general structure without limiting that structure to a specific subset of structures, we will generally construe the term to cover all known types of that structure" that the patent disclosure supports. *Renishaw*, 158 F.3d at 1250, 48 USPQ2d at 1122. Sensibly enough, our precedents show that dictionary definitions may establish a claim term's ordinary meaning. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344, 60 USPQ2d 1851, 1855 (Fed.Cir.2001) (using Random House Unabridged Dictionary to define the ordinary meaning of "portion" as encompassing both a one-piece and a two-piece structure); *Renishaw*, 158 F.3d at 1250, 48 USPQ2d at 1122 (noting that the meaning of a claim term may come from a "relevant dictionary" so long as the definition does not fly "in the face of the patent disclosure"); *Kegel*, 127 F.3d at 1427, 44 USPQ2d at 1127 (using Webster's *Third New International Dictionary* to define the claim term "assembly"); *Vitronics*

*Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 n. 6, 39 USPQ2d 1573, 1580 n. 6 (Fed.Cir.1996) ("Although technical treatises and dictionaries fall within the category of extrinsic evidence, as they do not form a part of an integrated patent document, they are worthy of special note. Judges are free to consult such resources at any time in order to better understand the underlying technology and may also rely on dictionary definitions when construing claim terms, so long as the dictionary definition does not contradict any definition found in or ascertained by a reading of the patent documents.").

■ An accused infringer may overcome this "heavy presumption" and narrow a claim term's ordinary meaning, but he cannot do so simply by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history. *Johnson Worldwide*, 175 F.3d at 989–90, 992, 50 USPQ2d at 1610; *Burke*, 183 F.3d at 1340, 51 USPQ2d at 1299. Indeed, contrary to the district court's analysis here, our case law makes clear that a patentee need not "describe in the specification every conceivable and possible future embodiment of his invention." *Rexnord*, 274 F.3d at 1344, 60 USPQ2d at 1856 (citations omitted).

■ Rather, as shown by our precedents, a court may constrict the ordinary meaning of a claim term in at least one of four ways. First, the claim term will not receive its ordinary meaning if the patentee acted as his own lexicographer and clearly set forth a definition of the disputed claim term in either the specification or prosecution history. *E.g., Johnson Worldwide*, 175 F.3d at 990, 50 USPQ2d at 1610; *Rexnord*, 274 F.3d at 1342, 60 USPQ2d at 1854. Second, a claim term will not carry its ordinary meaning if the intrinsic evidence shows that the patentee distinguished that term from prior art on the

basis of a particular embodiment, expressly disclaimed subject matter, or described a particular embodiment as important to the invention. *E.g., Spectrum Int'l*, 164 F.3d at 1378, 49 USPQ2d at 1068–69 (narrowing a claim term's ordinary meaning based on statements in intrinsic evidence that distinguished claimed invention from prior art); *SciMed Life Sys., Inc. v. Adv. Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1343–44, 58 USPQ2d 1059, 1064 (Fed.Cir. 2001) (limiting claim term based in part on statements in the specification indicating that "all embodiments" of the claimed invention used a particular structure); *Toro Co. v. White Consol. Indus., Inc.*, 199 F.3d 1295, 1301, 53 USPQ2d 1065, 1069 (Fed. Cir.1999) (limiting claim term based in part on statements in the specification describing a particular structure as "important to the invention").

■ Third, and most relevant to this case, a claim term also will not have its ordinary meaning if the term "chosen by the patentee so deprive[s] the claim of clarity" as to require resort to the other intrinsic evidence for a definite meaning. *E.g., Johnson Worldwide*, 175 F.3d at 990, 50 USPQ2d at 1610; *Gart*, 254 F.3d at 1341, 59 USPQ2d at 1295. Last, as a matter of statutory authority, a claim term will cover nothing more than the corresponding structure or step disclosed in the specification, as well as equivalents thereto, if the patentee phrased the claim in step- or means-plus-function format. 35 U.S.C. § 112 ¶ 6; *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880–81, 56 USPQ2d 1836, 1838 (Fed.Cir.2000) (construing § 112 ¶ 6).

1

■ Applying these principles, we hold that the claim term "reciprocating member," as used in the asserted patents, encompasses the multi-component, curved structure used by the accused exercise machines. The parties agreed before the dis-

trict court that "reciprocating" simply means to move back and forth, and we accept that definition on appeal. More important, "member," as defined by common and technical dictionaries, refers to a "structural unit such as a . . . beam or tie, or a combination of these," *see* McGraw–Hill Dictionary of Scientific and Technical Terms 1237 (5th ed.1994), or to a "distinct part of a whole," *see* American Heritage Dictionary 849 (3d ed.1996). Based on these definitions, we agree with CCS Fitness that the term "member" denotes a beam-like structure that is "a single unit in a larger whole." It is not limited to a straight-bar structure comprising a single component only.

■ In addition, Life Fitness has not shown that anything in the specification or prosecution history overcomes the "heavy presumption" that "member" carries its ordinary meaning. The specification never requires a certain number of components or certain shape; nor does it limit the "member" in either regard. Contrary to the district court's analysis, moreover, the specifications did not need to include a drawing of a multi-component, curved member for the claimed invention to cover that particular embodiment. The drawings merely illustrated a particular embodiment of the claimed member and the specifications did not clearly assign a unique definition to "member," distinguish "member" based on the prior art, disclaim subject matter or describe a single-component, straight-bar "member" as important to the invention.

Nor does the prosecution history contain any clear statements that would narrow the ordinary meaning of the claimed "member." Indeed, Life Fitness itself characterizes the statements in the prosecution history as posing a mere "inconsistency" with the ordinary meaning of "member," not as assertions that, *e.g.,*

clearly disclaimed subject matter. In any event, having reviewed the statements identified by Life Fitness, we see nothing that bears on the shape or the number of components comprised by the term "member." We see only a terse mention of the "angle" that a "foot platform" takes "relative to a reciprocating member" and the members' wheels and attachment to the crankshaft.

Life Fitness also relies on expert testimony, but this testimony does not establish the assertion that "member" lacks clear meaning. First, we can resolve the ordinary meaning of the claimed "member" by resort to the intrinsic evidence and dictionary definitions only. Thus, we do not need to examine expert testimony. Even doing so, however, we do not view this expert testimony as particularly helpful, since the inventor himself, presumably also an artisan of ordinary skill in the art, offered testimony that essentially contradicts the expert's assertion that "member" lacks an ordinary meaning. In other words, the battle between Life Fitness' expert testimony and CCS Fitness' inventor testimony is inconclusive. Unsurprisingly, the district court's infringement analysis did not rely on the testimony of either the expert witness or the inventor in reaching its claims construction conclusions. Neither do we.

*SciMed Life Systems* does not compel a different conclusion. *See* 242 F.3d at 1342–44, 58 USPQ2d at 1064–65. In that case, we determined that the claim term "lumen," as used in three patents covering a type of catheter, meant a "coaxial lumen" only. *Id.* at 1342, 242 F.3d 1337, 58 USPQ2d at 1064. The specification distinguished the claimed invention from the prior art based on that art's use of "dual lumens" and pointed out the advantages of coaxial lumens. *Id.* at 1343, 242 F.3d 1337, 58 USPQ2d at 1064. It also described "the present invention" as using a coaxial lumen, and it stated that "all embodiments of the present invention" use coaxial lumens. *Id.* at 1343–44, 242 F.3d 1337, 58 USPQ2d at 1064–65. We therefore determined that a catheter employing coaxial lumens was *the* invention. *Id.* at 1345, 242 F.3d 1337, 58 USPQ2d at 1066.

Here, on the other hand, nothing in the specifications distinguishes the claimed "member" from prior art based on its shape or number of components. And the specifications do not even imply that "all embodiments" of the claimed exercise machine must use a single-component, straight-bar member or else tout the advantages of using that particular structure. In short, Life Fitness cannot use the intrinsic evidence's silence to narrow the ordinary meaning of an unambiguous claim term. *See, e.g., Johnson Worldwide*, 175 F.3d at 992, 50 USPQ2d at 1612 ("[M]ere inferences drawn from the description of an embodiment of the invention cannot serve to limit claim terms."); *Kegel*, 127 F.3d at 1427, 44 USPQ2d at 1127 ("Without an express intent to impart a novel meaning to a claim term, the term takes on its ordinary meaning."); *see also Wang Labs.*, 197 F.3d at 1384, 53 USPQ2d at 1165–66 (limiting term "frame" to the character-based system in the specification when (among other things) the prosecution history distinguished the claimed invention from prior art based on that system).

In *Toro Company*, also relied on by Life Fitness, we limited a claim term—"said cover including means for increasing pressure"—to the structure shown in the patent's specifications and drawings. 199 F.3d at 1300–01, 53 USPQ2d at 1069. We did so because dictionary definitions of "cover" and "including" did not "shed dispositive light" on the scope of that claim limitation, *id.* at 1300, 199 F.3d 1295, 53 USPQ2d at 1069, and the specification described the particular structure at issue, a

ring physically attached to the cover, as "important to the invention." *Id.* at 1301, 199 F.3d 1295, 53 USPQ2d at 1069. But this precedent does not rescue Life Fitness' argument, for unlike the intrinsic evidence in *Toro,* nothing in the intrinsic evidence here describes a single-component, straight-bar "member" as important to the invention. *See id.; see also Watts,* 232 F.3d at 882–83, 56 USPQ2d at 1840–41 (limiting claim term "sealingly connected" to the "misaligned taper angles" disclosed in the specification when the claim term was "not clear on its face" and the prosecution history showed that the patentee had distinguished the claimed invention from prior art based on the "misaligned taper angles"); *Ethicon Endo–Surgery, Inc. v. U.S. Surgical Corp.,* 93 F.3d 1572, 1579, 1581, 40 USPQ2d 1019, 1024, 1026 (Fed.Cir.1996) (limiting term "pusher assembly" to the structures stated in the claims themselves and shown in the drawings when the claim term itself did not define the makeup of the "assembly" and the specification provided only "minimal guidance" about the term's scope).

### 2

■ Life Fitness' mild attempt to make the claimed "reciprocating member" a means-plus-function clause fares no better. A claim using that format will cover only the corresponding step or structure disclosed in the written description, as well as that step or structure's equivalents. 35 U.S.C. § 112 ¶ 6; *Watts,* 232 F.3d at 881, 56 USPQ2d at 1838; *Personalized Media Communications, LLC v. Int'l Trade Comm'n,* 161 F.3d 696, 703, 48 USPQ2d 1880, 1886 (Fed.Cir.1998). A claim limitation that actually uses the word "means" will invoke a rebuttable presumption that § 112 ¶ 6 applies. *Personalized Media Communications,* 161 F.3d at 703–04, 48 USPQ2d at 1887. By contrast, a claim term that does not use "means" will trigger the rebuttable presumption that § 112

¶ 6 does not apply. *Id.* at 704, 161 F.3d 696, 48 USPQ2d at 1887; *Watts,* 232 F.3d at 880, 56 USPQ2d at 1838. In this case, the claims at issue do not phrase the "reciprocating member" limitation in means-plus-function language, thereby triggering the rebuttable presumption that § 112 ¶ 6 does not govern.

■ Still, Life Fitness can rebut this presumption if it demonstrates that the claim term fails to "recite sufficiently definite structure" or else recites a "function without reciting sufficient structure for performing that function." *Watts,* 232 F.3d at 880, 56 USPQ2d at 1838. To help determine whether a claim term recites sufficient structure, we examine whether it has an understood meaning in the art. *Id.* at 880–81, 232 F.3d 877, 56 USPQ2d at 1838.

■ Here, we conclude that Life Fitness cannot rebut the presumption that "reciprocating member" is not restricted by § 112 ¶ 6 and thus covers more than the single-component, straight-bar structures (and their equivalents) shown in the patents' drawings. For one thing, Life Fitness itself has offered nearly no analysis in this regard, *i.e.,* has done nothing to try to overcome the presumption. Moreover, as set forth above, the dictionary definitions of "member" show that an artisan of ordinary skill would understand this term to have an ordinary meaning and to connote beam-like structures. *See Greenberg v. Ethicon Endo–Surgery, Inc.,* 91 F.3d 1580, 1583, 39 USPQ2d 1783, 1786 (Fed.Cir.1996) (" 'Detent' ... is just such a term. Dictionary definitions make clear that the noun 'detent' denotes a type of device with a generally understood meaning in the mechanical arts, even though the definitions are expressed in functional terms."); *Cole v. Kimberly–Clark Corp.,* 102 F.3d 524, 531, 41 USPQ2d 1001, 1006 (Fed.Cir.1996) (using dictionary definition

of "perforation" to discern whether one of ordinary skill would understand this term to connote structure).

 Further, in addition to the structure suggested by these dictionary definitions (*e.g.*, a "structural unit such as a . . . beam or tie, or a combination of these"), the claims themselves describe the "member" as having a "rear support and a front end" with one end of this structure circulating around a crankshaft and the other having wheels so that it can "rollably engage the base portion" of the claimed invention. This suffices for purposes of § 112 ¶ 6 and the presumption thereto, since a term need not connote a precise physical structure in order to avoid the ambit of that provision. *E.g., Personalized Media Communications,* 161 F.3d at 705, 48 USPQ2d at 1888.

### 3

Because the claim term "reciprocating member" encompasses a multi-component, curved structure, and because the parties do not dispute the structure of the accused device, we must reverse the district court's summary judgment determinations of no literal infringement and no infringement by equivalents.

We note that, as to the doctrine-of-equivalents analysis, the district court also appeared to rely on its construction of "reciprocating member." On the other hand, the court did discuss the "perfect circle" created by the claimed exercise machine, as opposed to the "elliptical" motion created by the accused device. In so doing, the court did not identify any claim language that related to this "perfect circle"; instead, it cited only the commercial embodiments shown in a video and illustrations of the claimed exercise machine.

 Accordingly, to the extent the district court's analysis relied on any claim limitation other than "reciprocating member," we vacate. In the course of

construing the disputed claim terms, a court should not ordinarily rely on the preferred embodiments alone as representing the entire scope of the claimed invention. *See SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1121, 227 USPQ 577, 586 (Fed.Cir.1985) (*en banc*) ("Infringement, literal or by equivalence, is determined by comparing an accused product not with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee, but with the properly and previously construed claims in suit."); *see also Rexnord,* 274 F.3d at 1344, 60 USPQ2d at 1856 (emphasizing that the scope of a claim term often covers more than the embodiments disclosed in the specification and that a patent applicant need not describe "in the specification every conceivable and possible future embodiment of his invention"). And so, if the district court here used illustrations and a video of the patented invention's commercial embodiment to compare the function-way-result of some claim limitation not identified in its opinion, we vacate that portion of the judgment instead of reversing it altogether. On remand, the district court may simply clarify that it was in fact relying solely on its construction of "reciprocating member" to conduct the doctrine-of-equivalents analysis. In either event, however, a remand is necessary.

### B

 Finally, Life Fitness contends that CCS Fitness waived its claim construction argument on appeal because CCS Fitness never presented the "Alternative A and B" arguments to the district court. We disagree. Our precedent makes clear that in the context of claim construction, a waiver may occur if a party raises a new issue on appeal, as by, *e.g.,* presenting a new question of claim scope. *Interactive Gift Express, Inc. v. Compuserve Inc.,* 256

F.3d 1323, 1347, 59 USPQ2d 1401, 1419 (Fed.Cir.2001). A waiver will not necessarily occur, however, if a party simply presented new or additional arguments in support of "the scope of its claim construction, on appeal." *Id.* In addition, we look to see whether the trial court and the party claiming waiver had fair notice and an opportunity to address the issue concerning the scope of a claim limitation. *See Finnigan Corp. v. Int'l Trade Comm'n,* 180 F.3d 1354, 1362–63, 51 USPQ2d 1001, 1007 (Fed.Cir.1999) (discussing "waiver" in the context of presenting claim construction arguments to an administrative law judge).

In this case, CCS Fitness appears to have argued from the start that its "reciprocating member" ought to carry its ordinary meaning and that the scope of this ordinary meaning encompasses the multi-component, curved structure used by the accused exercise machines. *See Interactive Gift Express,* 256 F.3d at 1347, 59 USPQ2d at 1419. Indeed, the district court itself indicated that CCS Fitness focused on this same argument during summary judgment, which further shows that neither Life Fitness nor the district court lacked notice or an opportunity to address the arguments now presented on appeal. *See Finnigan Corp.,* 180 F.3d at 1362–63, 51 USPQ2d at 1007. That CCS Fitness may have elaborated upon the argument it initially made to the district court (*e.g.,* by adding a discussion about "Alternatives A and B") does not undermine this conclusion. *See Interactive Gift Express,* 256 F.3d at 1347, 59 USPQ2d at 1419; *cf. Senmed, Inc. v. Richard–Allan Med. Indus., Inc.,* 888 F.2d 815, 818, 12 USPQ2d 1508, 1511 (Fed.Cir.1989) ("That an appellant's arguments had been ineptly presented to a trial court does not in itself preclude a reversal by this court if the record unequivocally establishes that the appealed judgment resulted from clear and revers-ible legal error."). We conclude that no waiver of this issue occurred.

### III

We reverse the district court's determination on summary judgment of no literal infringement, since that judgment rested on an incorrect construction of the claim term "reciprocating member." We remand for additional proceedings consistent with this opinion. On remand, the parties and the court may address the other disputed claim terms and whether they cover the structures used by the accused exercise machines. To the extent that the district court's analysis of the doctrine of equivalents rested on the construction of a claim term besides "reciprocating member," we vacate that portion of the judgment. To the extent it also rested on a construction of the claim term "reciprocating member," we reverse.

*REVERSE–IN–PART, VACATE–IN–PART and REMAND.*

COSTS

Each party shall bear its own costs.