SCHALL, Circuit Judge,
concurring-in-part, dissenting-in-part.
I fully agree with the majority opinion’s well-reasoned analysis of the recapture and invalidity issues. However, I am unable to agree with the majority’s construction of the term “potassium brómate repla-cer” in claims 5-8 and 10 of the '355 patent. For that reason, I would remand the case to the district court for an infringement analysis under what I believe to be the correct claim construction. Accordingly, I respectfully dissent-in-part.
I.
“[O]ur cases recognize that the specification may reveal a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess. In such cases, the inventor’s lexicography governs.” Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed.Cir.2005) (en banc) (citing CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1366 (Fed.Cir.2002)). Upon review of the specification and prosecution history, I conclude that Kim acted as her own lexicographer in defining the term “potassium brómate replacer” as “a slow acting oxidant that is functional throughout the entire manufacturing process.” Thus, I would construe the term in that manner.
II.
Throughout the specification of the '355 patent, Kim consistently defines the term “potassium brómate replacer” as “a slow acting oxidant that is functional throughout the entire manufacturing process.” The first instance occurs in the Abstract, which states in relevant part, “The potassium brómate replacer essentially comprises ascorbic acid, food acid, and/or phosphate. It is a slow acting oxidant that is functional throughout the entire manufacturing process. It is also an effective oxidant that produces properly oxidized dough needed in the production of high quality, yeast-leavened products.” '355 patent, abstract (emphasis added). The next instance occurs in the Background section, which provides, “It is a further object of the present invention to provide the ascorbic acid composition that acts as a slow acting oxidant that is functional throughout the entire manufacturing process.” '355 patent, col. 2, 11. 45 — 49 (emphasis added). In describing how the claimed invention overcomes disadvantages of prior potassium brómate repla-cers, the Background section further provides:
The advantages of the potassium bró-mate replacer provided in the present invention are:
*1327 (a) It comprises all natural ingredients.
(b) It is a slow acting oxidant that is functional throughout the entire manufacturing process.
(c) It is an effective oxidant that produces properly oxidized dough needed in the production of high quality, yeast-leavened products.
(d) It is specifically adapted for various methods of the breadmaking process.
Furthermore, the potassium bró-mate replacer provided in the present invention is a more effective oxidant than potassium brómate because potassium brómate has little effect on oxidation of dough during mixing and the early stages of proofing.
'355 patent, col. 2, 1. 57 to col. 3, 1. 5 (emphasis added).
The Summary of the Invention is also insightful. It states in part:
The present invention relates to potassium brómate replacer comprising an ascorbic acid composition that replaces an oxidizing agent of potassium bró-mate. The potassium brómate replacer essentially comprises ascorbic acid, food acid, and/or phosphate.
In methods for preparing the ascorbic acid composition, it has been discovered that a food acid added in an effective amount slows down oxidation of ascorbic acid to dehydroaseorbic acid in a dough and thus, ascorbic acid is changed to a slou) acting oxidant that is functional throughout the entire manufacturing process.
'355 patent, col. 3, 11. 8-18 (emphasis added). These passages evince that Kim defined “potassium brómate replacer” to mean “a slow acting oxidant that is functional throughout the entire manufacturing process.”
The Detailed Description is consistent with the passages cited above. It states:
[A] food acid slows down oxidation of ascorbic acid to dehydroaseorbic acid in dough by forming metal ion-food acid complex during the mixing stage of dough and gradually dissociating into free metal ion and food acid during the later stages of the manufacturing process. Thereby, ascorbic acid is changed from a fast acting oxidant to a slow acting oxidant. Thus, ascorbic acid combined with a food acid acts as a slow acting oxidant that is functional throughout the entire manufacturing process.
'355 patent, col. 5,11. 26-34 (emphasis added). The Detailed Description continues:
As illustrated in the preparation of ascorbic acid composition, a food acid added in an effective amount allows ascorbic acid to oxidize at a slow rate in a dough. Thus, ascorbic acid acts as a slow acting oxidant that is functional throughout the entire manufacturing process. Now ascorbic acid and food acid replace an oxidizing agent of potassium brómate.
'355 patent, col. 6, 11. 3-9 (emphasis added).[1] Thus, from the beginning of the *1328 patent in the Abstract through the Detailed Description, Kim consistently defined “potassium brómate replacer” as “a slow acting oxidant that is functional throughout the entire manufacturing process.”
In my view, the prosecution history also is instructive. In a response to an office action, in which she amended her claims, Kim stated:
3 to 30 ppm ascorbic acid combined with 5 to 60 ppm dicarboxylic acids does not act as a slow acting oxidant due to insufficient amounts of ascorbic acid and dicarboxylic acids used; thus, it is not potassium brómate replacer. About 10-300 ppm ascorbic acid combined with about 150-2,000 ppm food acid acts as a slow acting oxidant; thus, it is potassium brómate replacer
Kim continued, “[T]he potassium brómate replacer composition developed is a new, slow acting oxidant that is effective during mixing, proofing, and baking.”[2] These statements are consistent with statements made almost four years earlier in response to an office action in a related application. There, Kim wrote: “It has been discovered that a food acid added in an effective amount slows down oxidation of ascorbic acid to dehydroascorbic [sic] acid in dough. Thus, ascorbic acid is changed to a slow acting oxidant that is functional throughout the entire manufacturing process. Now ascorbic acid and food acid replace potassium brómate.” It seems to me that these passages from the prosecution history, when combined with the statements in the specification, compel the conclusion that Kim was acting as her own lexicographer by defining a “potassium brómate replacer” as “a slow acting oxidant that is functional throughout the entire manufacturing process.”
The majority construes the term “potassium brómate replacer” as “a composition that performs essentially the same function in the production of bread as would potassium brómate (by strengthening the dough, increasing loaf volume, and contributing to fine crumb grain)....” Majority Op. at 1318. For me, the problem with the majority’s claim construction is that it focuses almost exclusively on the Background section of the '355 patent and fails to take into account the remainder of the specification and the prosecution history. The majority quotes the Background as stating that “the potassium brómate repla-cer provided in the present invention is a more effective oxidant than potassium bró-mate....” Majority op. at 1318 (quoting '355 patent, col. 3, 11. 1-2). The majority then relies on the statement that
[o]xidizing agents provide strengthening of dough during the manufacturing process of yeast-leavened products. As a result, oxidizing agents are used to provide greater loaf volume, improve internal characteristics such as grain and texture, and enhance symmetry and keeping quality of yeast-leavened products.
'355 patent, col. 1, 11. 20-27. This passage appears at the beginning of the Background section. It discusses oxidizing agents generally — not the present invention specifically.
*1329 In sum, in my view, the intrinsic record’s repeated defining of a “potassium brómate replacer” as “a slow acting oxidant that is functional throughout the entire manufacturing process” overwhelms the portion of the specification upon which the majority relies for its claim construction. Thus, I would conclude that Kim acted as her own lexicographer in defining a “potassium brómate replaeer” as “a slow acting oxidant that is functional throughout the entire manufacturing process.” See Merck & Co. v. Teva Pharms. USA Inc., 395 F.3d 1364, 1370 (Fed.Cir.2005) (“When a patentee acts as his own lexicographer in redefining the meaning of particular claim terms away from their ordinary meaning, he must clearly express that intent in the written description.”). Accordingly, I would vacate the judgment of the district court and remand the case for an infringement analysis under this claim construction.

. Lastly, the Detailed Description concludes: Summarizing, it has been discovered that a food acid added in an effective amount slows down oxidation of ascorbic acid to dehydroaseorbic acid in a dough, thereby ascorbic acid is changed to a slow acting oxidant and a phosphate increases the amount of complex formation with food acid and metal ion. Thus, the ascorbic acid composition essentially comprises ascorbic acid, food acid, and phosphate and replaces an oxidizing agent of potassium brómate or other oxidizing agents. The potassium bró-mate replacer provided in the present invention is a more effective oxidant than [sic] potassium brómate because potassium brómate has little effect on oxidation of dough during mixing and the early stages of proofing.
'355 patent, col. 7,1. 62 to col. 8,1. 7.

. Furthermore, in an earlier response, Kim wrote:
The applicant's invention uses food acids to slow down oxidation of ascorbic acid to dehydroasorbic acid, resulting in the improvement in the role of ascorbic acid as an oxidant in the breadmaking process.... Phosphate is used to enhance the complex-ing power of food by increasing the pH value of the dough.... Accordingly, the ascorbic acid is changed from a fast acting oxidant to a slow acting oxidant that is effective and functional during mixing, proofing, and baking.