NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**ADVANCED MEDIA NETWORKS, LLC,**
*Plaintiff-Appellant*

**v.**

**AT&T MOBILITY LLC,**
*Defendant-Appellee*

_____

2018-1014

_____

Appeal from the United States District Court for the Northern District of Texas in No. 3:15-cv-03496-N, Judge David C. Godbey.

_____

Decided: September 17, 2018

_____

BRIAN ANDREW CARPENTER, Buether Joe & Carpenter LLC, Dallas, TX, argued for plaintiff-appellant. Also represented by MICHAEL CLAYTON POMEROY.

STEVEN MOORE, Kilpatrick Townsend & Stockton LLP, San Francisco, CA, argued for defendant-appellee. Also represented by ALTON LUTHER ABSHER, III, CAROLINE K. WRAY, Winston-Salem, NC; RUSSELL KORN, Atlanta, GA; TAYLOR HIGGINS LUDLAM, Raleigh, NC; MICHAEL

HAWES, Baker Botts, LLP, Houston, TX; LAUREN J. DREYER, Washington, DC.

———————————————

Before PROST, *Chief Judge,* LOURIE and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

Advanced Media Networks LLC (AMN) sued AT&T Mobility LLC (AT&T) for alleged infringement of U.S. Patent No. 5,960,074 ('074 patent), which relates to wireless networking. The district court issued a claim construction order and granted AT&T's motion for summary judgment of non-infringement as to claims 1–3, 9, 42, and 58 and invalidity under 35 U.S.C. § 305 as to claims 128–29, 135, 146, 160–61, 165–67, and 171. Because the district court correctly construed the term "ethernet packet switching protocol" to require the use of the IEEE 802.3 or draft IEEE 802.11 standards, and the construction of this term is dispositive, we affirm.

BACKGROUND

A. Networking Protocols and Layers

Computer networks typically use several protocols that work together to transmit information, and these protocols can be modeled as "layers" in a "stack." *See* J.A. 262. For example, the Open Systems Interconnect (OSI) model has seven layers, which include, starting from layer 1, the physical layer, data link layer, network layer, transport layer, session layer, presentation layer, and application layer. J.A. 226.

In the Internet Protocol (IP), data is divided into "packets" that are routed to intended destinations and might not arrive in the order in which they are sent. *See* J.A. 227–28. IP is a network-layer (layer 3) protocol. *See id.* Transmission Control Protocol (TCP), a transport-layer (layer 4) protocol, reassembles packets in the proper

order.  J.A. 228.  The combination of TCP and IP is abbreviated TCP/IP.  J.A. 14.

"Ethernet" protocols, typically used in local area networks, reside below TCP and IP at the data link and physical layers of the OSI model (layers 2 and 1 respectively).  J.A. 273 ¶ 65; J.A. 290.  In 1983, the Institute of Electrical and Electronics Engineers (IEEE) published its 802.3 standard, which was based on preexisting work by Robert Metcalfe and others.  *See* J.A. 462–63.  IEEE 802.3 describes ethernet on a wired network, *see* J.A. 338, while a standard ratified in 1997 called 802.11 describes wireless ethernet, *see* J.A. 559; J.A. 272.  By 1996, the time of application for the '074 patent, a working group had been developing a draft of the 802.11 standard for five years. J.A. 271.

As an example of how protocols at different layers interact, an application such as a file transfer program, operating at the application layer, might take part of a file and add an application header to the data before passing it to the presentation layer.  *See* J.A. 226; J.A. 341.  This process repeats from layer to layer.  At the transport and network layers, the data transmission would rely on TCP and IP, respectively.  *See id.*  From the network layer, the data could be passed to an ethernet connection at layers 2 and 1.  *See id.*  At the physical layer, the data passes to its destination.

## B. The '074 Patent

The '074 patent issued from an application dated September 23, 1996.  The claimed invention connects a wireless local area network (LAN) to a microwave communication system via a hub.  "In one embodiment, the LAN 104 is a wireless ethernet LAN connecting multiple remote personal computers (PCs) as nodes."  '074 patent, col. 4 ll. 32–34.  Relevant to the parties' claim construction dispute, "[i]n one embodiment, the microwave communication system and the wireless LAN trans-

fers information using an ethernet packet switching protocol . . . ." *Id.* col. 2 ll. 9–11. Claim 1 is illustrative:

1. A telecomputer network system comprising:

a redundant digital microwave communication system;

a wireless local area network (LAN); and

a mobile hub station configured to transfer information as a single nomadic transmission/reception point between the microwave communication system and the wireless LAN using an ethernet packet switching protocol.

## C. Prior USPTO Proceedings

The '074 patent issued in 1999 with 40 claims. J.A. 21. During the course of four *ex parte* reexaminations, AMN amended certain claims in ways that are not at issue in this appeal and added 131 claims, for a total of 171 claims. *Id.* No claims were found unpatentable.[1]

## D. The Instant Dispute

AMN sued AT&T in October 2015. AMN accused smartphones and other devices operating on AT&T's wireless 3G and 4G/LTE network of infringing claims of the '074 patent. J.A. 1434–35; J.A. 174. AMN argued that AT&T's wireless communication system constitutes a "redundant digital microwave communication system" under the claims. J.A. 1434. Further, AMN accused smartphones and other devices capable of acting as wireless access points (or "hotspots") of satisfying the '074

---

[1] Additionally, six *Inter Partes* Review petitions have been filed against the '074 patent. Appellant Br. 29. The results of those proceedings are not before us.

patent's "wireless LAN" and "mobile hub" limitations. J.A. 1434–35.

On March 1, 2017, the district court issued a claim construction order. J.A. 1–14. The district court construed "ethernet packet switching protocol" to mean "a packet switching protocol defined by the IEEE 802.3 and draft IEEE 802.11 standards as of the filing date of the Patent." J.A. 9. The district court also adopted AT&T's proposed construction of "wireless local area network (LAN)" and construed it to mean "an access point device and client devices connected by local over-the-air links through which the client devices communicate with the access point device." J.A. 8.

AMN argued that AT&T's accused devices satisfy the "ethernet packet switching protocol" limitation because (a) the devices, when acting as mobile hotspots, rely on IP to transfer data between connected clients and servers on the Internet via AT&T's 3G or 4G/LTE network; and (b) in AMN's view, IP is an ethernet packet switching protocol. *See* J.A. 104.

On August 25, 2017, the district court rejected AMN's argument that IP—independent of 802.3 or 802.11—is an "ethernet packet switching protocol" and granted summary judgment of non-infringement for claims 1–3, 9, 42, and 58. *Advanced Media Networks, LLC v. AT&T Mobility LLC*, No. 3:15-CV-3496-N, 2017 WL 3987201 (N.D. Tex. Aug. 25, 2017). The district court also analyzed claims 128–29, 135, 146, 160–61, 165–67, and 171, which were added in reexamination and recite "internet protocol" instead of "ethernet packet switching protocol." The district court concluded that because "ethernet packet switching protocol" does not encompass IP, these claims impermissibly broadened the scope of claim 1 and were thus invalid under 35 U.S.C. § 305. *Id.* at *2. AMN appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

I. Construction of "Ethernet Packet Switching Protocol"

The "ultimate issue of the proper construction of a claim" is "a question of law" that we review *de novo*. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 838–39 (2015). When a district court "consult[s] extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period," the district court's "subsidiary factfinding must be reviewed for clear error on appeal." *Id.* at 841.

There is a "heavy presumption" that claim terms "carry their accustomed meaning in the relevant community at the relevant time." *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1355 (Fed. Cir. 2004). "A claim term should be given its ordinary meaning in the pertinent context, unless the patentee has made clear its adoption of a different definition or otherwise disclaimed that meaning." *Ancora Techs., Inc. v. Apple, Inc.*, 744 F.3d 732, 734 (Fed. Cir. 2014). For a patentee to act as its own lexicographer and give a term something other than its well-established meaning, the patentee must "clearly set forth a definition of the disputed term." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).

The district court construed "ethernet packet switching protocol" to mean "a packet switching protocol defined by the IEEE 802.3 and draft IEEE 802.11 standards as of the filing date of the Patent." J.A. 9. The parties dispute whether an "ethernet packet switching protocol" encompasses *any* system that transfers data between a wireless LAN and a microwave communication system using TCP/IP (such as AT&T products used as wireless hotspots), or whether, to satisfy this limitation, a device needs to transfer data between the networks using the IEEE 802.3 or 802.11 protocols.

The parties' disagreement centers on the meaning of "ethernet" when combined with the phrase "packet switching protocol." While AMN argues that "ethernet" broadly encompasses any transmission protocol that relies on a "shared transmission medium," AT&T argues that by 1996, persons of skill in the art defined "ethernet" with reference to the IEEE 802.3 and draft 802.11 standards. The specification sheds no light on which construction of "ethernet" is correct; it does not discuss shared media, nor does it discuss the 802.3 or 802.11 standards. Accordingly, the parties and the district court relied on extrinsic evidence to establish the meaning of "ethernet packet switching protocol" in 1996.

The district court reviewed the evidence presented and found that persons of ordinary skill in the art in 1996 understood "ethernet" to refer the IEEE 802.3 and draft 802.11 standards. Relying in part on a networking textbook, AT&T's expert declared: "As of 1996, those of ordinary skill in the art understood 'ethernet' to refer to the IEEE 802.3 standard protocol." J.A. 270; J.A. 224 ("IEEE 802.3, popularly called Ethernet™, for example, is a bus-based broadcast network . . . ."); *see also Ethernet,* Federal Standard 1037C, *Telecommunications: Glossary of Telecommunication Terms* (1996), J.A. 1455 ("Ethernet: A standard protocol (IEEE 802.3) . . . ."); *Ethernet, Oxford Dictionary of Computing* (4th ed. 1996), J.A. 455 ("The formal definition of the Ethernet standard is available as ISO 802.3."). AT&T's expert explained that "ethernet" was not limited to 802.3, which specified wired networking: "Because of its many similarities with the IEEE 802.3 protocol . . . the IEEE 802.11 standard was at the time of the application for the '074 patent often referred to by those of ordinary skill in the art as 'wireless ethernet.'" J.A. 272. Moreover, "[b]y 1996, the IEEE 802.11 working group had been developing the IEEE 802.11 wireless LAN standard for five years." J.A. 271. AMN submitted other extrinsic evidence in support of its "shared medium"

construction, *e.g.,* J.A. 444; J.A. 309–10; but none of AMN's citations compels reversal.

AT&T's expert also distinguished ethernet from TCP/IP because ethernet operates at the physical and data link layers of the OSI model, while IP and TCP operate at the network and transport layers, respectively. J.A. 273. One technical dictionary on which both parties rely indicates that "Ethernet is a physical link and data link protocol reflecting the two lowest layers of the DNA/OSI model." *Ethernet*, *Newton's Telecom Dictionary* (7th Ed. 1994), J.A. 290. AMN cites no technical literature indicating that "ethernet" encompasses IP. Indeed, AMN concedes that "the *noun* 'ethernet' and the *noun* 'IP' are not the same." Reply Br. 4 (emphasis added). To the extent AMN is arguing that using "ethernet" as an adjective rather than as a noun somehow changes its meaning and broadens its scope, AMN has presented no intrinsic or extrinsic evidence clear enough to compel departure from the conventional understanding of "ethernet," which requires IEEE 802.3 or 802.11.

Based on the evidence of record, the district court did not clearly err in making a factual finding that to a person of ordinary skill in the art in 1996, "ethernet" referred to the IEEE 802.3 and draft 802.11 standards.[2]

Thus, in light of the district court's well-supported findings, and in the absence of a redefinition or disclaimer by the patentee, the ordinary meaning of an "ethernet packet switching protocol" requires transmitting data in

---

[2]    The district court did not construe "packet switching protocol" independently of "ethernet." J.A. 8–9. On appeal, the parties agree that "packet switching protocol" needs no independent construction, as one skilled in the art would have readily understood it.

packets over a data link that uses the IEEE 802.3 or draft IEEE 802.11 standards as of the filing date of the patent. For example, a device that uses IP at OSI layer 3 and IEEE 802.11 at OSI layer 2 uses an ethernet packet switching protocol. On the other hand, a device that uses IP at OSI layer 3 and does *not* use IEEE 802.3 or 802.11 would not use an ethernet packet switching protocol.[3] "Ethernet" had such a well-understood meaning by 1996 that, without further guidance in the intrinsic record, it is unreasonable to suggest that "ethernet packet switching protocol" referred simply to layer 4 and layer 3 protocols such as TCP/IP, without the 802.3 or 802.11 protocols at layer 2.

AMN nevertheless argues that when used in conjunction with "packet switching protocol," ethernet refers not to 802.3 or 802.11, but more broadly to communication using a packet switching protocol "via a shared transmission medium." While AMN does not explicitly state that it was acting as its own lexicographer, the thrust of AMN's argument is that the definition of "ethernet packet switching protocol" does not require the commonly understood "ethernet" protocols (i.e., 802.3 or 802.11) but includes IP alone. As explained below, we disagree.

A construction of "ethernet" requiring IEEE 802.3 or draft 802.11 is consistent with the structure of the claims. Claim 1 recites, in relevant part: "a mobile hub station configured to transfer information . . . between the microwave communication system and the wireless LAN using

---

[3] The parties dispute whether 802.3 or 802.11, without any layer 3 protocols such as IP, are "ethernet packet switching protocols." We need not resolve this issue because AMN's infringement theory is based on the accused devices' use of the layer 3 Internet Protocol and not IEEE 802.3 or 802.11.

an ethernet packet switching protocol." On its face, claim 1 does not require the use of TCP/IP. Dependent claim 3 recites "[t]he network defined in claim 1 wherein the information is transferred using the TCP/IP protocol." AMN argues that TCP/IP must be a limitation on "ethernet packet switching protocol." But claim 3 does not actually specify that "the ethernet packet switching protocol is TCP/IP." As explained above, TCP/IP and ethernet operate at different layers in the OSI model and can operate in parallel or independently. *See, e.g.*, J.A. 228; J.A. 335. AMN's expert agreed that TCP/IP data at layers 3 and 4 could be carried via ethernet protocol at layer 2, *or via a layer 2 protocol other than ethernet.* J.A. 1382–83 at 91:25–92:8. Thus, claim 3 could be interpreted to require ethernet protocol at layer two *plus* TCP/IP at layers 3 and 4. The claim structure does not indicate that TCP/IP alone is a type of ethernet packet switching protocol.

AMN primarily relies on two passages in the specification to argue that "ethernet packet switching protocol" includes IP even without 802.3 or draft 802.11. The specification states: "In one embodiment, the microwave communication system and the wireless LAN transfers information using an ethernet packet switching protocol, such as an Internet protocol (e.g., the TCP/IP protocol)." '074 patent, col. 2 ll. 8–11. Furthermore, the specification states: "In one embodiment, the microwave communication system transfers information using multiple relay stations via an ethernet packet switching protocol such as the IEEE 802.10 protocol or the TCP/IP protocol used on the World Wide Web." *Id.* col. 2 ll. 49–53.

AMN's citation to these passages is unpersuasive. For a patentee to act as its own lexicographer and give a term something other than its well-established meaning, the patentee must "clearly set forth a definition of the disputed term." *CCS Fitness*, 288 F.3d at 1366. Here, the specification does not provide a clear definition of "ether-

net packet switching protocol." Rather, it briefly mentions two possible embodiments, one using TCP/IP and one using a security protocol known as 802.10 that the specification does not mention elsewhere. Under our precedents, these brief references in the specification do not constitute a redefinition of the well-understood term "ethernet."

For example, in *Ancora,* we held that a patent specification that used a term in a limited manner to describe embodiments was insufficient to redefine the term. 744 F.3d at 735. We analyzed whether the term "program" in a patent was limited to application programs or could also include operating systems, in accordance with the ordinary meaning of "program." *Id.* We noted that the specification discussed using the claimed invention to verify "application" programs in several examples, including an example describing a "preferred embodiment." *Id.* Nevertheless, we explained that "nothing in the specification would lead one of ordinary skill in the art to understand that the claims use 'program' in a sense narrower than its ordinary meaning." *Id.* Just as a description of a "preferred embodiment" in *Ancora* was insufficient to redefine "program," here, a description of "one embodiment" of an "ethernet packet switching protocol" is insufficient to redefine "ethernet." The specification's mention of an embodiment using TCP/IP does not exclude a communication system using ethernet (802.3 or 802.11 at OSI layer 2) in combination with TCP/IP at OSI layers 3 and 4.

We have also held that a patentee's "inconsistent" usage of a term in the intrinsic record did "not clearly indicate that the patent use[d] the language at issue without its accepted scientific descriptive meaning." *Bayer CropScience AG v. Dow AgroSciences LLC*, 728 F.3d 1324, 1328 (Fed. Cir. 2013) (holding that "[n]othing in the intrinsic record affirmatively indicates that, if the phrase '2,4–D monooxygenase' is descriptive, the 'mono' part is to be ignored"). AMN's proposed construction would have us

ignore the accepted meaning of "ethernet" in "ethernet packet switching protocol."

AMN also relies on a statement during prosecution that the prior art does not disclose an "ethernet packet switching protocol such as a TCP/IP protocol" to argue that the disputed term includes IP. But like AMN's cited statements from the specification, this fails to set forth a clear definition of "ethernet packet switching protocol" that could displace the ordinary meaning of "ethernet," which requires 802.3 or 802.11. Even if, as AMN argues, "packet switching protocol," in isolation, could encompass IP or any other protocol that sends data in packets (such as the IPX protocol), AMN does not explain how combining "ethernet" with "packet switching protocol" could broaden the phrase "ethernet packet switching protocol" to mean IP or TCP/IP, independent of the use of 802.3 or draft 802.11. Like the district court, we reject adopting an interpretation of "ethernet packet switching protocol" that would essentially give no meaning to the word "ethernet."

AMN's remaining claim construction arguments are unpersuasive. AMN argues that draft 802.11, the only wireless protocol that fits the court's construction of "ethernet," has short range and would not be suitable to transfer data to the "redundant microwave communication system," which, AMN argues, is a wireless *wide*-area network, or WAN. As AT&T points out, however, AMN cites no evidence in support of its argument, and the claims at issue on appeal do not require a wireless WAN, but simply a microwave communication system, which is not restricted to a wide area network. Thus, even though 802.11 is typically associated with local area networks, that fact should not render it unsuitable for the claims as written.

AMN also argues that the fact that claims 128 and 160—which recite "using an Internet protocol" instead of

"using an ethernet packet switching protocol"—issued during reexamination shows that the PTO believed IP was in the scope of "ethernet packet switching protocol." As AT&T points out, however, this Court has refused to use later-issued claims to determine the scope of earlier-issued claims. *See ArcelorMittal France v. AK Steel Corp.*, 786 F.3d 885, 889 (Fed. Cir. 2015).

Finally, AMN asserts that construing the disputed term to require the use of 802.3 or draft 802.11 would exclude the purported embodiments of "ethernet packet switching protocols" listed in the specification, namely TCP/IP and 802.10. But, as AT&T points out, nothing precludes the use of TCP/IP or 802.10 in conjunction with 802.3 or 802.11 ethernet technology. As AMN's expert acknowledged, "TCP/IP can [be] and frequently is used on 802.11 networks." J.A. 655 ¶ 26. Moreover, AT&T's expert explained that 802.10's security functions "can be used in networks based on IEEE 802 physical or data link layer protocols." J.A. 274 ¶ 66. AMN's counsel agreed that 802.10's security features can be used in networks utilizing IEEE 802.3 or 802.11 ethernet. Oral Arg. 14:41–52.

In summary, the district court correctly concluded that an "ethernet packet switching protocol" requires the use of the IEEE 802.3 or draft IEEE 802.11 standards.[4]

---

[4]    AT&T also argues that during reexamination of the '074 patent, AMN disclaimed TCP/IP from being an ethernet packet switching protocol. Because the plain meaning of the disputed term provides a sufficient basis to establish that an "ethernet packet switching protocol" requires the use of IEEE 802.3 or draft IEEE 802.11, we need not reach the issue of disclaimer. Moreover, because our construction of "ethernet packet switching protocol"

## II. Summary Judgment

We apply the law of the regional circuit when reviewing a district court's grant of summary judgment. *Classen Immunotherapies, Inc. v. Elan Pharm., Inc.*, 786 F.3d 892, 896 (Fed. Cir. 2015). The Fifth Circuit reviews a district court's grant of summary judgment de novo. *Profectus Tech. LLC v. Huawei Techs. Co.*, 823 F.3d 1375, 1379 (Fed. Cir. 2016).

## A. Non-Infringement

AMN agrees that claim construction is case-dispositive,[5] but AMN argues that it should prevail even if "ethernet packet switching protocol" requires IEEE 802.3 or draft 802.11 because AMN found what it characterizes as a "draft 802.11" document, which, AMN claims, "defines" IP. The district court concluded that IP "is the protocol defined by IETF RFC 791 and its progeny through the filing date of the patent," J.A. 14, and AMN has not appealed this ruling. However, AMN asserts that a draft specification entitled "IEEE P802.11-96/108, Draft Inter Access Point Protocol (IAPP) Specification" (J.A. 613–36) disclosed IP in substantially the same level of detail as RFC 791. According to AMN, because the IAPP document discusses IP in detail, and the IAPP document constitutes a "draft 802.11 standard," IP must constitute an "ethernet packet switching protocol," and any device that uses IP can satisfy the relevant limitation of claim 1. The district court rejected AMN's reasoning. 2017 WL 3987201 at *1–2.

---

renders all asserted claims either invalid or not infringed, we need not reach the construction of "wireless LAN."

[5]    Appellant Br. 56 ("AMN conceded that it could prove infringement only if [ethernet packet switching protocol] included within its scope IP.")

We agree with the district court that the IAPP document does not define IP. On appeal, AMN admits that "RFC 791, published in 1981, 'specifies the DoD Standard Internet Protocol.'" Appellant Br. 7. During claim construction, AMN explicitly argued that "TCP/IP is *not* defined by the IEEE 802.x family of standards, but is instead defined by various Internet Engineering Task Force Request for Comments documents." J.A. 426 (emphasis added). AMN clearly understood that IP does not fall within the formal technical specifications of the IEEE 802.3 or draft 802.11 standards but is instead defined elsewhere. Even if the IAPP document were a "draft 802.11 standard"—and the district court determined that it was not[6]—AMN still would not be able to identify any draft 802.11 standard specifying that IP is an "ethernet packet switching protocol."

Because IP—without 802.3 or 802.11—does not meet the definition of an ethernet packet switching protocol, and AMN's only infringement theory was based on the accused products' use of IP, the district court did not err in granting summary judgment of non-infringement.

## B. Invalidity of Reexamination Claims

The district court granted summary judgment of invalidity of claims 128–29, 135, 146, 160–61, 165–67, and 171, which recite "internet protocol" instead of "ethernet packet switching protocol" because it concluded that the claims are broader than the claims in the original patent. *See* 35 U.S.C. § 305 ("No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chap-

---

[6] In light of the analysis above, we need not reach the district court's ruling that the IAPP document "is facially not a draft IEEE 802.11 standard." J.A. 17.

ter.").   AMN's only argument for reversal is that the claims are not broader because IP is within the scope of "ethernet packet switching protocol."   Because we reject AMN's argument that IP, without IEEE 802.3 or draft 802.11, is encompassed within the term "ethernet packet switching protocol," we also affirm the district court's conclusion that claims 128–29, 135, 146, 160–61, 165–67, and 171 impermissibly broadened the scope of the claims in the '074 patent.

### III. Remaining Issues

AMN complains that the district court erred in taking judicial notice of evidence outside the record in construing the challenged claim terms and granting summary judgment.   *See* Appellant Br. 5.   In this case, any error in relying on the challenged material was harmless, because even without the challenged material, the record supports the district court's conclusion that using IP without IEEE 802.3 or draft 802.11 does not satisfy the "ethernet packet switching protocol" limitation.

We have considered AMN's other arguments and find them unpersuasive.   For the foregoing reasons, we affirm the district court's order granting summary judgment.

**AFFIRMED**